NOTICE
Decision filed 08/12/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 240799-U

NO. 5-24-0799

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 20-CF-783 |
| | ) | |
| KENNE DYE, | ) | Honorable |
| | ) | Randall B. Rosenbaum, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE CATES delivered the judgment of the court.
Justices McHaney and Sholar concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court did not err in denying the defendant's motion to correct the mittimus as the defendant was not eligible for presentence credit. The defendant's due process rights were not violated as a result of an *ex parte* communication between the State and the trial court.

¶ 2    The defendant, Kenne Dye, appeals the trial court's denial of his motion to correct the mittimus to reflect the sentencing credits that he received for his presentence work assignments. The defendant further contends that the trial court violated his due process rights by engaging in an *ex parte* conversation with the State regarding the defendant's motion that requested additional sentencing credit. For the following reasons, we affirm the judgment of the trial court.

¶ 3                        I. BACKGROUND

¶ 4    On July 15, 2020, the defendant's parole officer and accompanying police officers discovered narcotics, a firearm, and ammunition at the defendant's home during a routine parole

1

compliance check. The next day, the defendant was charged by information with five felony offenses, arraigned, and assigned a public defender in cause No. 20-CF-783. Subsequently, the defendant hired private counsel.

¶ 5    On December 13, 2021, the defendant and the State appeared for trial. Prior to the start of the trial proceedings, the trial court inquired if there were any pending plea offers from the State. Following a discussion between the parties, the State offered a plea agreement in which the defendant would plead guilty to count V, unlawful possession of a weapon by a felon, a Class 4 felony. As a part of this plea, the defendant would agree that he would accept incarceration in the Illinois Department of Corrections (IDOC) for 18 years, to be served at 50% with 18 months of mandatory supervised release. The State additionally required as a part of the plea agreement that the defendant would plead guilty to the offense of resisting a peace officer, a Class 4 felony, that involved a separate case, 21-CF-2. As a part of this plea, the defendant agreed to two years in IDOC, to be served at 50% and to run consecutive to his plea in 20-CF-783. All other remaining charges would be dismissed. The trial court then restated the final terms of the agreement on the record for the parties:

> "THE COURT: All right. Apparently the offer is still open on the table. So at this point, sir, one of those decisions which is really up to you, you can consult with your lawyer or anybody else whether or not you want to go to trial in these matters or whether or not you want to accept a plea. The plea offer is for pleading guilty to count five for 18, that's the weapons charge, plus two years on the other felony case for a total of 20 years, but that would be day-for-day, 50 percent.
> THE DEFENDANT: Right.
>
> THE COURT: So do you need a moment to talk to your lawyer, that is the offer on the table, or do you know what you want to do, sir?
> THE DEFENDANT: Yeah, I know what I want to do. Can I talk to her, 30 seconds?

> THE COURT: You may.
>
> (Off-the-record discussion.)
>
> [DEFENSE COUNSEL]: My client wants to accept that offer.
>
> THE COURT: Is that correct, Mr. Dye?
>
> THE DEFENDANT: Yes, your Honor."

The State was then asked to confirm the plea offer, to which the State responded,

> "[STATE]: Judge, in 20 CF 783, count five, the defendant will plead guilty to that offense. He is eligible for Class X sentencing on that offense, and the agreement is that he would serve 18 years in the Department of Corrections for that offense. I don't have the number of days in custody, but we will get that."

The State went on to describe the plea offer regarding 21-CF-2, the offense of resisting a police officer, a Class 4 felony.

¶ 6     The trial court further discussed the terms of the plea offer and stated, "We don't have the exact number of days, but you'll get credit for every single day you've been in on these cases, okay, sir?" The defendant responded affirmatively. The trial court and the parties discussed the potential credit that the defendant was entitled to receive regarding his presentence custody. Ultimately, the trial court accepted the defendant's plea agreement as to the charges and he was sentenced accordingly. A docket entry was entered stating that "[a]t the time of the plea, the pretrial jail credit was unknown to the parties and the court." Following receipt of each party's stance via email on presentence credit, the trial court entered a sentencing order on December 15, 2021, indicating that the defendant received a sentence of 18 years in IDOC with a mandatory supervised release of 18 months to be served at 50%[1] and dismissed his remaining charges. In that same order,

---

[1]The record does not include a separate sentencing order reflecting the defendant's plea to 21-CF-2, for which, he was sentenced to 2 years in IDOC to be served at 50% and to run consecutive to his 18-year sentence. The sentence is referred to in the defendant's sentencing order for 20-CF-783.

3

the trial court also credited the defendant with 517 days to be credited against his sentence as to the plea on the weapons charge, 20-CF-783.

¶ 7    On April 7, 2022, the defendant filed a motion for order *nunc pro tunc*. The defendant requested that he be entitled to an additional 87 days of presentence credit for time that he spent in Champaign County jail. The trial court created a docket entry addressing the defendant's motion which noted that "[a]ccording to jail records known at the time of sentencing, Defendant was in custody on both these matters at the same time, from July 15, 2020 to Dec 21, 2021. Because the prison sentences are consecutive, he cannot receive pretrial jail credit in both cases for the same time in jail." The trial court denied the defendant's motion.

¶ 8    On May 28, 2024, the defendant filed a *pro se* motion to correct the mittimus pursuant to section 5-4.5-100(c-5) of the Unified Code of Corrections (730 ILCS 5/5-4.5-100(c-5) (West 2022)). The defendant also included "730 ILCS 5/3-6-3(A)(4.2)" to support his assertions. Specifically, the defendant claimed that he was credited with 517 days but that this calculation did not include credit for his "county programming" that he did while he was incarcerated in the Champaign County jail prior to him accepting the plea agreement. The defendant alleged that he completed work as a "pod porter/janitor" working from 7 a.m. to 11 p.m. starting on October 5, 2020, to November 17, 2020. The defendant further alleged that he worked the same jobs and shifts from February 1, 2021, to August 13, 2021. The total number of days sought by the defendant would add 206 days to his presentence credit.

¶ 9    On May 29, 2024, the trial court notified the State via email that the defendant was requesting additional presentence credit due to work performed in the county jail and indicated that if the State opposed the motion, the trial court would "summarily deny" his motion. The State responded in opposition, asserting that the defendant's custodial employment did not meet the

4

criteria for the sentence credit sought by the defendant. The defendant nor his counsel were included in the email exchange. After receiving the State's response, the trial court sent a letter to the defendant informing him that a docket entry was going to be entered, denying his motion to correct the mittimus. The trial court reasoned, among other things, that the defendant's statutory support for "programming" was more akin to substance abuse programs, not janitorial work. Further, the trial court stated that section 3-6-3(a)(4.2) of the Unified Code of Corrections (730 ILCS 5/3-6-3(a)(4.2) (West 2022)) referred to IDOC rules and regulations and did not apply to work done in the county jail. Finally, the trial court stated that a request for sentencing credit should have been made at the time the defendant entered into the fully negotiated plea, and thus the defendant's motion was untimely.

¶ 10    The defendant now appeals the trial court's denial of his motion to correct the mittimus and further alleges that his due process rights were violated as a result of the *ex parte* conversation between the trial court and the State regarding the defendant's motion.

¶ 11                                    II. ANALYSIS

¶ 12    On appeal, the defendant asserts that the trial court erred by denying his request for additional sentence credit, which was based on his work assignments completed during confinement at the Champaign County jail. The defendant requests that he be given credit for his work, or in the alternative, that this cause be remanded for a hearing. We note that on appeal, the defendant asserts two arguments regarding presentence credit for the first time. Specifically, the defendant contends that he is eligible for presentence credit pursuant to sections 3-6-3(a)(1.5) and 3-6-3(a)(4)(A) of the Unified Code of Corrections (Code). 730 ILCS 5/3-6-3(a)(1.5), (a)(4)(A) (West 2022). The defendant failed to raise these claims in his motion to correct mittimus at the

5

trial court; therefore, we find the defendant has forfeited these claims.[2] The defendant's motion at the trial court, however, directly relied on section 3-6-3(a)(4.2)(A)[3] of the Code as the relevant statute to be applied to his request for additional credit. 730 ILCS 5/3-6-3(a)(4.2)(A) (West 2022).

¶ 13    Section 3-6-3(a)(4.2)(A) of the Code provides, "The rules and regulations shall also provide that any *prisoner* engaged in self-improvement programs, volunteer work, or work assignments that are not otherwise eligible activities under paragraph (4), shall receive up to 0.5 days of sentence credit for each day in which the prisoner is engaged in activities described in this paragraph." (Emphasis added.) 730 ILCS 5/3-6-3(a)(4.2)(A) (West 2022). "The language in this provision does not entitle individuals held in pretrial custody to sentence credit for work assignments. Had the legislature intended for this section to apply to inmates in pretrial custody, it would have expressly stated that intention as it did in the other sections." *People v. Williamson*, 2024 IL App (3d) 220501, ¶ 26. In addition, the Illinois Supreme Court has previously held that, "where a fully negotiated plea deal represents a complete and final expression of the parties' agreement, a presumption arises that every material right and obligation is included and neither party may unilaterally seek modification of the agreement." *People v. Wells*, 2024 IL 129402, ¶ 24. Statutory interpretation presents a question of law which we review *de novo. People v. Clark*, 2019 IL 122891, ¶ 17.

¶ 14    Here, the defendant argues on appeal that section 3-6-3(a)(4.2)(A) of the Code includes him and that he should be eligible for presentence credit. 730 ILCS 5/3-6-3(a)(4.2)(A) (West 2022). We disagree. The defendant's presentence work was performed while he was in custody at the Champaign County jail prior to his sentencing. We find that the statute in question applies only

---

[2]Illinois Supreme Court Rule 472(c) (eff. Feb 1, 2024) does not permit an appeal to be taken by a party "from a judgment of conviction on the ground of any sentencing error specified above unless such alleged error has first been raised in the circuit court."

[3]The defendant incorrectly cites to "730 ILCS 5/3-6-3(A)(4.2)" in his motion to correct mittimus.

to individuals that are in the custody of IDOC. Furthermore, the defendant had the opportunity to request the number of days of presentence credit in his fully negotiated plea agreement; however, he did not make such a request. Instead, he acquiesced when the trial court indicated that the defendant would be given the number of days to be determined based on his pretrial detention. Therefore, we find that the trial court did not err in its denial of the defendant's motion to correct the mittimus relating to the defendant's work as a pod porter-janitor prior to his plea agreement.

¶ 15 The defendant next claims that his due process rights were violated when an *ex parte* exchange via email occurred between the State and the trial court. The trial court received a motion accompanied by an affidavit, from the defendant, seeking a correction of the mittimus. Subsequently, the court contacted the State to ascertain whether there was any opposition to the defendant's request. Contrary to the defendant's claim, we find no violation of the defendant's due process rights.

¶ 16 A defendant's right to procedural due process is guaranteed by both the United States and Illinois Constitutions. See U.S. Const., amend. XIV, § 1; Ill. Const. 1970, art. I, § 2. While criminal defendants have a "general right to be present at every stage of trial" their absence must result in the "denial of an underlying substantial right, in other words, a constitutional right; and it is only in such a case that plain error is committed." (Internal quotation marks omitted.) *People v. Brown*, 2023 IL 126852, ¶ 15. Simply stated, a defendant's absence during a stage in his criminal proceedings will violate his constitutional rights only if the record demonstrates that the absence caused an unfair proceeding. *People v. Lindsey*, 201 Ill. 2d 45, 57 (2002).

¶ 17 Illinois Supreme Court Rule 472 states, "the circuit court retains jurisdiction to correct the following sentencing errors at any time following judgment and after notice to the parties, including during the pendency of an appeal, on the court's own motion, or on motion of any party

7

\*\*\*." Ill. S. Ct. R. 472(a) (eff. Feb. 1, 2024). Here, the defendant was not legally entitled to the pretrial custody credits which he was claiming and the trial court's decision to deny them was a nondiscretionary application of the terms of the fully negotiated plea agreement. The *ex parte* conversation that occurred was initiated by the defendant and was beyond the express terms of the plea agreement. The defendant attached an affidavit to his request explaining why he felt entitled to the credit. The trial court inquired of the State whether it would oppose the defendant's request to correct the mittimus. The State notified the trial court that it intended to oppose the defendant's motion and explained the basis for its objection. The defendant had entered his plea before this same trial court. Thus, the court understood the terms of the negotiated plea and had made a decision on defendant's request, subject to the State notifying the court. This was a ministerial act, as the State could have waived any objection to the defendant's request. Therefore, the defendant was not entitled to a hearing on his motion for credit at that stage of the proceedings. As previously noted, our supreme court has held that when a defendant enters into a fully negotiated plea deal, he is strictly bound by the exact terms of that deal. See *Wells*, 2024 IL 129402, ¶ 24. Simply stated, the *ex parte* email communication between the State and the trial court did not have any bearing on the trial court's determination such that the proceeding was unfair or prejudicial to the defendant. See *Lindsey*, 201 Ill. 2d at 57.

¶ 18    In light of the foregoing, we find that the trial court did not err in its denial of the defendant's motion to correct mittimus. Further, we find that the defendant's due process rights were not violated and did not result in a denial of any substantial right.

¶ 19                                III. CONCLUSION

¶ 20    The judgment of the trial court is affirmed.

¶ 21    Affirmed.

8